IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| v. | : | |
| RICARDO MELENDEZ | : | No. 18-304-2 |

**MEMORANDUM**

PRATTER, J.                                                                                       AUGUST 16, 2022

Ricardo Melendez seeks compassionate release to care for his son while the minor child's mother cannot serve as a full-time caregiver. But he has not fully exhausted his complaint and, despite the Government's requests for further information, he has not shown that his circumstances are extraordinary or compelling enough to warrant his early release from custody. The Court thus denies his motion.

## BACKGROUND

### I. The Conviction

Mr. Melendez was caught along with his co-defendant in a rowhouse in Philadelphia, preparing to package cocaine that had been hidden in small pieces of furniture and shipped via U.S. Mail. The United States Postal Inspection Service ("USPIS"), having intercepted the cocaine while in transit and obtained a search warrant for the parcel, had replaced it with another "sham" substance and repackaged the furniture with a tripwire. Once Mr. Melendez and his companion opened the drug package and triggered the tripwire, Postal Inspectors moved into the house and observed drug packaging materials and another package of cocaine similarly stashed in furniture. Approximately two kilograms of cocaine were uncovered from the furniture's secret compartments, and Mr. Melendez was arrested at the scene.

1

A grand jury charged Mr. Melendez with one count each of conspiracy to distribute cocaine, possession of cocaine with intent to distribute, and attempted possession of cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 846, and 18 U.S.C. § 2. Mr. Melendez pled guilty to all charges. He was sentenced to the mandatory minimum term of 60 months' imprisonment and four years of supervised release, and the Court ordered that he pay a $5,000 fine and $300 special assessment. He is now serving his sentence at Fort Dix Federal Correctional Institute ("Fort Dix FCI") and has an anticipated release date of January 15, 2023.

## II. The Request for Compassionate Release

Mr. Melendez is a father of three. One of his minor children suffers from cerebral palsy, a serious neurological disorder that results in difficulty walking and maintaining balance. The condition requires a caretaker who is capable of physically moving Mr. Melendez's son, a task made more difficult by his son's weight. Mr. Melendez avers that his son's mother has served as sole caregiver since Mr. Melendez's incarceration, but, as she suffers from back problems, she struggles to provide the help that her son needs as a result of his cerebral palsy. Moreover, Mr. Melendez argues that his family does not have the means to pay for in-home medical assistance. Mr. Melendez now moves for compassionate release, arguing that extraordinary and compelling reasons exist warranting his early release because he is the only alternative caregiver equipped to care for his son.

## LEGAL STANDARDS

For the most part, courts "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Before asking a court to modify a sentence, a prisoner must first have "fully exhausted" his administrative remedies within the prison before applying to a court. 18 U.S.C. § 3582(c)(1)(A). Assuming a prisoner has met that threshold requirement, a court can,

in limited circumstances, reduce a sentence for "extraordinary and compelling reasons." § 3582(c)(1)(A)(i).

To qualify as extraordinary, the reason for a sentence reduction must be "[b]eyond what is usual, customary, regular or common." *Extraordinary* (def. 1), *Black's Law Dictionary* (11th ed. 2019). To be compelling, the reason must be "irresistible," such that the court is "oblige[d]" or "force[d]" to reduce the sentence. *Compelling* (def. b.), *Oxford English Dictionary* (2d ed. 1989); *Compel* (def.1), *id.* Extraordinary and compelling reasons exist in the circumstance where there has been a "death or incapacitation of the caregiver of the defendant's minor child or minor children." U.S.S.G. § 1B1.13 cmt. n.(1)(C).[1] The prisoner bears the burden of proving that such extraordinary and compelling reasons exist to justify compassionate release. *United States v. Adeyemi*, 470 F. Supp. 3d 489, 512 (E.D. Pa. 2020).

Once the prisoner has shown an extraordinary and compelling reason to warrant a sentence reduction, the Court must then consider the sentencing factors, set out in 18 U.S.C. § 3553, to decide if the sentence *should* be reduced, and by how much. 18 U.S.C. § 3582(c)(1)(A).

DISCUSSION

I. **Mr. Melendez Has Not Properly Exhausted His Administrative Remedies**

The Court must deny Mr. Melendez's motion at the outset for failure to comply with the exhaustion requirement set forth under 18 U.S.C. § 3582(c)(1)(A). The Third Circuit Court of Appeals has required "strict compliance" with the exhaustion requirement. *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Whether or not this rule is jurisdictional, as some courts have found, or a claim-processing rule, as others have found, it remains a threshold requirement of

---

[1] On its face, U.S.S.G. § 1B1.13 governs a "motion of the Director of the Bureau of Prisons" for compassionate release. Thus, this "policy statement is not binding on prisoner-initiated motions." *United States v. Andrews*, 12 F.4th 255, 258 (3d Cir. 2021). Still, it is highly persuasive authority that "sheds light on the meaning of extraordinary and compelling reasons." *Id.* at 260.

"critical[ ] importance." *Id.*; *see United States v. Cruz*, 455 F. Supp. 3d 154, 157 (M.D. Pa. 2020) ("[S]ince [the defendant] has not yet presented his request for compassionate release to the BOP, it must be dismissed for lack of jurisdiction . . . ."); *United States v. Greenlove*, 469 F. Supp. 3d 341, 349 (M.D. Pa. 2020) ("[T]he court cannot waive Section 3582(c)(1)(A)'s exhaustion requirement because it is jurisdictional."). *But see, e.g., United States v. Texeira-Nieves*, 23 F.4th 48, 53 (1st Cir. 2022) (explaining that the 30-day exhaustion requirement is a "non-jurisdictional claim-processing rule"); *United States v. Saladino*, 7 F.4th 120, 122 (2d Cir. 2021) ("The exhaustion requirement in § 3582(c)(1)(A) is not a jurisdictional limitation.").

Here, Mr. Melendez twice failed to exhaust his administrative remedies, which "presents a glaring roadblock foreclosing compassionate release at this point." *Raia*, 954 F.3d at 597. Mr. Melendez first sent a letter on January 5, 2021, requesting that the warden of his BOP facility bring a motion for compassionate release on his behalf because of the medical risks posed to his own health by COVID-19. But that will not fulfill the exhaustion requirement where the subsequent motion filed with this Court presents entirely different grounds for compassionate release. *See, e.g., United States v. Wilson*, 14-cr-209-1, 2020 WL 1975082, at *4 (Apr. 24, 2020) ("To enable [the] Bureau of Prisons to make th[e] informed decision envisioned by Congress [in the First Step Act], the Bureau of Prisons must be fairly put on notice of the grounds for compassionate release."); *United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021) (describing the purpose of the exhaustion requirement as "provid[ing] the Bureau [of Prisons] with the information necessary to move for release on a defendant's behalf").

Then, Mr. Melendez filed his current motion for compassionate release and simultaneously sent a letter to his warden setting forth the "extraordinary and compelling" reasons related to his family circumstances that he has presented to the Court here. However, that too fails to represent

4

strict compliance with § 3582(c)(1)(A) because a defendant must wait to bring a motion on his own behalf until "the lapse of 30 days from the receipt of . . . a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A). Therefore, the Court must deny this motion as premature in light of the Third Circuit Court of Appeals' ruling in *Raia*. Nevertheless, in the hopes of providing Mr. Melendez clarity in any future motions for compassionate release, the Court will briefly consider the merits of his motion as well.

## II. Mr. Melendez Has Not Met His Burden of Proving That Extraordinary and Compelling Reasons for His Release Exist

Mr. Melendez explains that the sole caregiver for, and mother of, his son, a minor who suffers from a serious disease, is partially incapacitated herself due to back pain and that Mr. Melendez is therefore the "only other option" to provide adequate care to their child. The special medical needs of Mr. Melendez's son were cited by both Mr. Melendez and the Government as considerations in their sentencing memoranda filed with the Court. While the Court acknowledges Mr. Melendez's difficult family circumstances, as it did during sentencing, Mr. Melendez himself notes that the medical issues of his son's caregiver do not render her "*completely incapacitated.*" Mot. to Reduce Sentence, Doc. No. 92, at 4. Moreover, at the time of sentencing, the Government understood that Mr. Melendez's family had various support systems in place to provide additional care for his son, including "daily nursing care, attendance at a school designed to meet his needs, . . . . transportation to and from that school" and "a nurse [who] was available to help with lifting the child when needed." Gov.'s Resp. in Opp. To Def.'s Mot. to Reduce Sentence, No. 93 at 7.

Although the Government sought further information from Mr. Melendez's counsel as to the status of these additional caregiving supports, it did not receive further information on that point. Therefore, even if the Court did not have to deny the current motion for failure to exhaust, the Court would not find that Mr. Melendez met his burden or "reach[ed] the high bar articulated

5

by Congress and the Sentencing Commission" to show that his family circumstances are so extraordinary and compelling as to warrant his early release. *Adeyemi*, 470 F. Supp. 3d at 512.

And even if Mr. Melendez could affirmatively demonstrate that extraordinary and compelling reasons existed, the Court would still need to consider the § 3553(a) factors. These factors are (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed . . . to protect the public from further crimes of the defendant"; (3) "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct"; and (4) "the need for the sentenced imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a).

The crime to which Mr. Melendez pled guilty is extremely serious. To reflect the seriousness of that crime, this Court sentenced him to 60 months' imprisonment, with the hope that such a sentence would deter both Mr. Melendez and others from engaging in similar drug trafficking.

Reducing Mr. Melendez's sentence would not be appropriate here. True, Mr. Melendez pled guilty to non-violent drug charges and had no prior record. He is also mere months from his release date. But the drugs that he was packaging for distribution involved large quantities and had the potential to have a serious and harmful impact on the surrounding community. And the sentence imposed by the Court was already the statutory five-year mandatory minimum. In short, releasing Mr. Melendez early would not "promote respect for the law" or "provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A).

## CONCLUSION

For these reasons, the Court denies Mr. Melendez's motion to reduce his sentence. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE